236 N.J. Super. 542 (1989)
566 A.2d 552
FREDRIC HABERMAN AND SHEILA HABERMAN, PLAINTIFFS-APPELLANTS,
v.
WEST SADDLE DEVELOPMENT CORP. A NEW JERSEY CORPORATION, GEORGE MCCARTHY, THORE CHRISTIANSEN, JOHN DOE AND RICHARD ROE, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 27, 1989.
Decided November 28, 1989.
*543 Before Judges KING, BAIME and KEEFE.
*544 Jaffe & Schlesinger, attorneys for appellants (Howard G. Schlesinger, of counsel; Robert K. Walsh, on the brief).
John V. McCambley, attorney for respondents, West Saddle Development Corp., George McCarthy and Thore Christiansen.
KEEFE, J.A.D.
Plaintiffs Fredric and Sheila Haberman appeal from an order for summary judgment in favor of defendants West Saddle Development Corp., George McCarthy, and Thore Christiansen (collectively referred to as West Saddle). The Law Division held that plaintiffs' civil action for damages was barred by the election of remedies provision of the New Home Warranty and Builders' Registration Act (Act), N.J.S.A. 46:3B-9. This statute has been the subject of several reported decisions. Rzepiennik v. U.S. Home Corp., 221 N.J. Super. 230 (App.Div. 1987); Nolan v. Homes by Brinkerhoff, Inc., 230 N.J. Super. 306 (Law Div. 1988) and Postizzi v. Leisure + Technology, Inc., 235 N.J. Super. 285 (App.Div. 1989). Both Nolan and Postizzi involved interpretations of the statute in the context of a warranty issued by Home Owners Warranty Insurance Company (HOWIC) and administered by the Home Owners Warranty Corporation (HOW). This case also involves a policy issued by HOWIC and administered by HOW. However, because the wording of the documents executed by the plaintiffs in this matter and their relevant conduct differs substantially from the facts in both Nolan and Postizzi, neither case is depositive of this case.
For reasons to be expressed more fully we hold that: 1) Plaintiffs' execution of the Dispute Settlement Record and Acceptance of Decision forms constituted an election of remedy under N.J.S.A. 46:3B-9 which prevents them from relitigating West Saddle's responsibility to correct items covered by the HOWIC insurance policy. 2) To the extent that plaintiffs' current suit seeks damages resulting from West Saddle's failure to satisfactorily correct items for which the Dispute Settler *545 found West Saddle responsible, an additional remedy is provided in the HOW policy and must be exhausted before plaintiffs may resort to litigation. 3) Because the HOWIC policy does not cover contractual disputes that are not also covered warranty matters identified in the policy, plaintiffs are not barred by statute from pursuing such contract claims in this litigation. Thus, we affirm in part and reverse in part the order granting summary judgment to the defendants and remand the matter for further proceedings conforming with this opinion.
In September 1987 plaintiffs entered into a contract with West Saddle for the purchase of a new home in Saddle River, New Jersey. The contract provided that acceptance of a deed did not result in a waiver of plaintiffs' right to bring a claim against West Saddle for failure to comply with the terms of the contract. Title was transferred to plaintiffs on January 23, 1983. At closing of title, West Saddle provided plaintiffs with the HOWIC policy in compliance with the requirements of the Act. N.J.S.A. 46:3B-1 to -12. Plaintiffs provided West Saddle with a punch list of numerous defects and repairs required to be made to the property at the time of the closing and, apparently, thereafter.
Dissatisfied with West Saddle's response to their request for repairs, plaintiffs initiated the dispute settlement procedure provided in the policy. A Dispute Settler was appointed by HOW and dispute settlement proceedings took place over the course of approximately five months.
On or about September 7, 1983 plaintiffs executed an Acceptance of Decision form. The form in pertinent part says:
If you accept the dispute settler's decision, complete and sign this form and return it to the HOW regional office within 45 days in which case the builder will be bound to perform according to the decision. If you do not complete this form and return it within 45 days, you will be deemed to have rejected the decision and the builder will not be obligated to perform in accordance with it.
I (we), the Undersigned, part(ies) to Home Owners Warranty Agreement, ..., having participated in EDS Meeting which resulted in the attached decision, do hereby accept the terms of said Decision exactly as rendered in full settlement of all claims presented at the meeting.
*546 The Decision alluded to in the form referred to a Dispute Settlement Record consisting of six pages and some 59 items dated July 6, 1983 and signed by both plaintiffs. The Dispute Settlement Record contained the Dispute Settler's decision concerning West Saddle's responsibility or lack of same for each item. Above the plaintiffs' signature on the Dispute Settlement Record was the following sentence:
I understand that the foregoing represents a voluntary agreement between the Builder and the Home Owner(s), and that the HOW Corporation is not responsible for enforcing any portions of this agreement which are inconsistent with the decision of the Dispute Settler.
For reasons not made totally clear to us in the plaintiffs' brief, an identical Acceptance of Decision form was executed by them on October 12, 1983. The "Decision" referred to in that form was apparently the amended decision of the settler dated September 5, 1983, relating to items 35 and 50 on the July 6, 1983 Dispute Settlement Record as well as a Dispute Settlement Record of some five pages apparently containing additional claimed defects. The plaintiffs executed the latter Dispute Settlement Records on October 5, 1983.
Defendant McCarthy, on behalf of West Saddle, filed a certification in support of defendants' motion for summary judgment. In that certification, McCarthy said that by April, 1984 West Saddle had completed the work for which the Dispute Settler found it responsible. Thereafter, he asked HOW to perform a compliance inspection. The record does not reflect whether the inspection was made or, if so, its result. In any event, plaintiffs' certification in opposition to the motion for summary judgment contended that West Saddle's repairs were insufficient. In addition, they contended that several items submitted to the Dispute Settler for consideration under the HOW policy were found by the Dispute Settler to be contractual matters outside the scope of the policy. Our review of the Dispute Settlement Record reveals that the Dispute Settler found seven such claims to fall outside of the policy provisions.
N.J.S.A. 46:3B-9 provides in pertinent part:

*547 Nothing contained herein shall affect other rights and remedies available to the owner. The owner shall have the opportunity to pursue any remedy legally available to the owner. However, institution of procedures to enforce a remedy shall constitute an election which shall bar the owner from all other remedies. Nothing contained herein shall be deemed to limit the owner's right of appeal as applicable to the remedy elected.
Plaintiffs filed the present two-count complaint seeking damages in the first count for breach of contract and in the second count for consumer fraud. The question is whether, under the facts of this case, the plaintiffs instituted "procedures to enforce a remedy" which bar them from pursuing the remedies set forth in the complaint.
Clearly, mere participation in the conciliation procedures established by the policy does not constitute an election of remedies. Nolan, 230 N.J. Super. at 310; Postizzi, 235 N.J. Super. at 289. However, neither Nolan nor Postizzi can be read to hold that participation in conciliation procedures prohibits a determination that a remedy was elected as envisioned by the statute regardless of the facts. In order to determine if the homeowner has elected a remedy, we must look to the terms of the policy, other documents issued to the homeowners and the homeowners' conduct.
The relevant provisions of the policy are as follows:

Dispute Settlement. Upon receiving your "Request for Warranty Performance" HOW will notify your Builder and ask him to respond to your complaint. If your Builder disagrees with your complaint, HOW will arrange for informal dispute settlement between you and your Builder by a neutral third party. Your Builder will be bound by such third-party decision when accepted by you (see "Acceptance of Decision" below).
Under the Magnuson-Moss Warranty Act and under this Warranty, you may not file suit against your Builder or HOW until your claim has been submitted to informal dispute settlement and a decision has been reached or you have waited 40 days for a decision following your submission of a Request for Warranty Performance, whichever comes first. State or federal laws may permit you to file suit without waiting, despite this paragraph.

Acceptance of Decision. If you accept the decision, you must sign and return to your Builder and HOW at the mailing address shown on the Declarations page of the Warranty Policy, within 45 days after the date of decision, an "Acceptance of Decision" form by which you agree to accept the decision in full satisfaction of your claim. Your builder will then be bound to perform as required in the decision. Neither HOW, the Insurer nor your Builder is *548 responsible for damage caused or made worse by your delay in accepting the decision.

Rejection of Decision. After you receive the decision, you must decide whether or not to accept it. If you do not accept the decision within 45 days, your Builder is under no obligation to perform in accordance with the decision.

Release. When your Builder or HOW finishes repairing or replacing the defect or pays you the costs of doing you must sign and deliver to your Builder or HOW a full release of all legal obligations with respect to the defect.
Plaintiffs contend that they have not initiated a procedure to "enforce a remedy" under the statute until such time as they have executed a release. In our view that is not an appropriate interpretation of the clear wording of the policy, nor would such an interpretation effectuate the legislative intent expressed in N.J.S.A. 46:3B-9. Rather, execution of the Acceptance of Decision form and acceptance of the builder's performance of work constitutes the election of remedy. The "Release" provision of the policy is simply a procedural requirement signifying the insured's acknowledgement that the builder or HOW has satisfactorily repaired or replaced the defect for which the Dispute Settler found the builder responsible.
In our view, it is totally inequitable and beyond the expectations of the parties to permit a homeowner to file suit and seek damages where the homeowner and builder have accepted the decision of the Dispute Settler and the builder has performed work in accordance with that decision. This is so even when the homeowner is not satisfied with the builder's performance under the decision since the policy provides the homeowner with a remedy in such instances. Under the provision titled "Remedy" the policy provides in pertinent part:
Your Builder and HOW have agreed that if he does not perform under this Warranty, HOW as the administrator of the Builder's warranty, will meet the Builder's warranty obligation, subject to a one/time $250.00 charge to you.
The Nolan case is distinguishable from this case. The facts in Nolan reveal only that the homeowners participated in the dispute settlement procedure without executing any acceptance of decision or acceptance of work performed by the builder. Postizzi is also clearly distinguishable. In that case we found that the homeowner was mislead by the wording of *549 the Dispute Settlement Record form which he executed. The form executed by the Postizzis reflected that they were accepting the decision of the Dispute Settler only as to those items which the Dispute Settler found the builder responsible to repair. Because the Postizzis may have been led to believe that they were not precluded from instituting suit as to those items for which the Dispute Settler found the builder not responsible, and because the Postizzis had placed a reservation of acceptance above their signature on the Dispute Settlement Record, we concluded that they had not elected a remedy under the statute. In the case before us, however, neither the Dispute Settlement Record nor the Acceptance of Decision form are misleading. We find nothing in the conduct of the plaintiffs which leads us to conclude that they intended to do anything other than to accept the decision of the Dispute Settler "in full settlement of all claims."
The question of whether West Saddle has complied with the decision of the Dispute Settler is an issue which we do not address here because plaintiffs have not sought the remedy provided by the policy. Paterson Redevelopment Agency v. Schulman, 78 N.J. 378, 386-87 (1979), cert. den., 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979). We conclude, however, that contractual obligations not covered by the policy's warranty provisions are specifically excluded from the dispute resolution procedure afforded by the policy. In that respect, the policy provides as follows:
This Warranty is independent of the contract between you and your Builder for the construction of the home and/or its sale to you. Contract disputes which are not warranty disputes are not eligible for informal dispute settlement under this Warranty. Nothing contained in that contract or any other contract between you and your Builder can restrict or override the provisions of this Warranty. You and your Builder may contract for additional standards or requirements, but any such agreement between you and your Builder will not be binding under this Warranty.
Obviously, any claim which is not the subject matter of a Warranty dispute under the policy and subject to the informal Dispute Settlement procedure cannot become the subject of a *550 procedure "to enforce a remedy" in the contemplation of N.J.S.A. 46:3B-9. Except to identify those seven items, as noted, which the Dispute Settler found to be contractual in nature and beyond the scope of the warranty, the record before us permits no further delineation. For that reason the trial judge on remand must develop a sufficient record to sort out those claims which are barred by N.J.S.A. 46:3B-9 from those which are not.
Revised and remanded.