289 N.J. Super. 618 (1996)
674 A.2d 647
PETER N. PERRETTI, JR., ATTORNEY GENERAL OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RAN-DAV'S COUNTY KOSHER, INC., A NEW JERSEY CORPORATION, T/A COUNTY KOSHER, AND ARTHUR WEISMAN, INDIVIDUALLY AND AS PRESIDENT OF RAN-DAV'S COUNTY KOSHER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1995.
Decided April 25, 1996.
*621 Before Judges DREIER and KESTIN.
Edward K. Zuckerman argued the cause for appellants.
Nancy Costello Miller, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Miller, on the brief).
The opinion of the court was delivered by KESTIN, J.A.D.
The early procedural history of this matter was summarized in our opinion in Ran-Dav's County Kosher, Inc. v. State, 243 *622 N.J. Super. 232, 236-37, 579 A.2d 316 (App.Div. 1990), rev'd, 129 N.J. 141, 608 A.2d 1353 (1992), cert. denied sub nom. National Jewish Comm'n on Law & Public Affairs v. Ran-Dav's County Kosher, Inc., 507 U.S. 952, 113 S.Ct. 1366, 122 L.Ed.2d 744 (1993). After the Supreme Court's July 22, 1992 decision on the constitutionality of the regulatory scheme governing the preparation, maintenance, and sale of kosher products, the Clerk of the Supreme Court advised the Union County Assignment Judge of the decision and requested that appropriate action be taken. Copies of the Clerk's memorandum were sent to all participants in the appeal.
On July 28, 1992, the trial court entered an order dismissing the summary action for enforcement. None of the parties in the enforcement action was notified of the entry of that order or received a copy. This inadvertent omission had the effect of depriving defendants of an opportunity to file a timely appeal as of right from an interlocutory order entered on June 15, 1989, dismissing the counterclaim, which had not only raised the issues that came to be disposed of in the separately considered challenge to the kosher regulations, but also included causes of action for civil rights violations and tort claims. We had previously, on September 18, 1989, denied defendants' motion for leave to appeal.
In late January 1993, defense counsel inquired of the trial court concerning the status of the matter and was advised for the first time that the dismissal order had been entered six months earlier. Within two weeks, defendants filed a motion pursuant to R. 4:50-1 to set aside the dismissal order, to restore counts two and seven (the civil rights and tort causes of action) of the counterclaim, and to transfer the matter to the Law Division for a jury trial. The trial court denied the motion and defendants appealed.
We held in an unpublished opinion that the dismissal order of July 28, 1992, should have been vacated on defendants' application and reentered "in order to afford defendants the right to appeal, which circumstances had denied them." We remanded for that purpose without addressing the merits of defendants' motion *623 seeking restoration of the second and seventh counts of their counterclaim and transfer of the matter to the Law Division. We now address that question and hold that defendants should not have been denied an opportunity to seek adjudications of causes of action which they raised in a timely and appropriate manner. See County of Essex v. City of East Orange, 214 N.J. Super. 568, 576, 520 A.2d 788 (App.Div.), certif. denied, 107 N.J. 120, 526 A.2d 189 (1987); cf. S.E.W. Friel Co. v. New Jersey Turnpike Authority, 73 N.J. 107, 122, 373 A.2d 364 (1977).
Rule 4:67 summary actions are, by definition, designed "to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment[.]" Pressler, Current N.J. Court Rules, comment on R. 4:67-1 (1995). The inclusion of issues that require plenary consideration is inimical to the design of the rule. It is for this reason that no counterclaim or cross-claim may be asserted without leave of court. R. 4:67-4(a).
The entire controversy doctrine is premised upon "the fundamental principle ... that `the adjudication of a legal controversy should occur in one litigation in only one court[.]'" DiTrolio v. Antiles, 142 N.J. 253, 267, 662 A.2d 494 (1995) (quoting Cogdell v. Hospital Ctr., 116 N.J. 7, 15, 560 A.2d 1169 (1989)). To determine whether different claims are part of the same controversy "the central consideration is whether the claims ... arise from related facts or the same transaction or series of transactions. It is the core set of facts that provides the link between distinct claims against the same ... parties and triggers the requirement that they be determined in one proceeding." Id. at 267-68, 662 A.2d 494 (citations omitted).
It may appear that these two standards, each designed to promote judicial efficiency, are at war with each other. On analysis, however, that is not the case. They are actually complementary.
*624 With recent elucidations of the entire controversy doctrine in DiTrolio v. Antiles, supra; Circle Chevrolet v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509 (1995); Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 662 A.2d 523 (1995); and Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co., 142 N.J. 336, 662 A.2d 536 (1995), it is clear that the R. 4:67-4(a) limitation on asserting a counterclaim or cross-claim in a summary action is not a prohibition. Rather, it is evident that leave must be obtained so as to afford the trial court an opportunity to manage the litigation between the necessary parties, providing for expeditious resolution of those issues that can be addressed quickly, and more thorough development of those that require plenary treatment. Cf. Pressler, supra, comment on R. 4:67-4. The seeming exception for counterclaims and cross-claims in summary actions, added to R. 4:30A, the entire controversy doctrine rule, in 1992, cannot be seen as an exception at all. Although
the need for a single comprehensive adjudication may be outweighed by the complexity, confusion or unmanageability that might arise from joinder [of claims or parties,] the joinder determination does not repose with the parties. It is the trial court's responsibility to determine whether or not joinder is appropriate in a given case, and thus litigants should be compelled to bring all actions at one time. The trial court is vested with the discretion to sever or stay an inappropriate consolidation. A plaintiff's failure to allow the trial court the opportunity to manage the full controversy at the outset diminishes the force of any later claim that joinder would have been inappropriate.
[DiTrolio, supra, 142 N.J. at 274-75, 662 A.2d 494 (citations omitted).]
Thus it was defendants' entire controversy obligation to raise their civil rights, torts and other causes of action by way of a motion for leave to file a counterclaim in the summary action. Concomitantly, it was the trial court's responsibility in ruling upon such a motion, to exercise the substantial discretion it had to manage the entire controversy between the parties, including the entry of an order severing those claims and assigning them appropriately for plenary treatment in other divisions of the Superior Court. Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 355, 476 A.2d 250 (1984) (Handler, J., concurring).
*625 Here, defendants did not initially move for leave to file their counterclaim; and others joining as claimants in the counterclaim did not initially move to intervene. The counterclaim was simply filed with named claimants in addition to the defendants themselves, and with other "defendants on the counterclaim" in addition to the plaintiff himself. Only after argument on the order to show cause that had initiated the summary action for enforcement, did defendants move for leave to file the counterclaim and for intervention on behalf of the additional counterclaimants. The Attorney General opposed the motion and cross-moved for dismissal of the counterclaim and denial of the motions to intervene. The cross-motion was granted primarily because the trial court lacked jurisdiction to consider most of the issues raised in the counterclaim, those having to do with the validity of the kosher regulations. R. 2:2-3(a)(2). The civil rights and torts claims were apparently swept along with these.
To be sure, under then-prevailing practice perceptions, defendants had every opportunity to preserve the civil rights and tort claims by filing a timely, separate Law Division action seeking the relief claimed. But it was also, even then, well within the authority of the trial court, if not the trial court's obligation under R. 1:13-4(a), to sever and transfer those causes of action instead of dismissing them. See Ran-Dav's, supra, 243 N.J. Super. at 237-38 n. 3, 579 A.2d 316. In the light of the entire controversy cases of 1995, it is now clearer than ever that, where litigants have discharged their entire controversy obligations by raising all related causes of action in a single proceeding, the trial court is obliged to assume a proactive management role in such matters, by, for example, severing or joining claims, staying or accelerating their consideration, and retaining or transferring jurisdiction.
Accordingly, deeming as done that which ought to have been done, we order the matter transferred to the Law Division and remand for such further proceedings therein as may be appropriate.